IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FILED**

UNITED STATES DISTRICT COURT
ALBUQUERQUE. NEW MEXICO

MAR  4 2004

*Robert M March*
CLERK

UNITED STATES OF AMERICA,

Plaintiff,

v.

No. CR 03-1451 BB

KURT DONALD COUSINS and
BUKOLA TOLASE-COUSINS,

Defendants.

### MEMORANDUM OPINION
### AND
### ORDER DENYING MOTION TO SUPPRESS

THIS MATTER is before the Court on *Defendants' Motion to Suppress* [#111]. The Court having heard evidence on February 13, 2004, considered the briefs of counsel, and being otherwise advised, finds the motion should be Denied.

### *FACTUAL BACKGROUND*

Defendants are charged with manufacturing and maintaining a place for the purpose of manufacturing marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B), 846, and 856. It is alleged that they had approximately 505 marijuana plants in the backyard of their home in Rio Rancho, New Mexico.

On July 3, 2003, a worker from the Public Service Company of New Mexico, Robert Bryant, came to turn off Defendants' electricity for the second time due to delinquent payment of their utility bills. That individual, by walking along the side of

129

the house (to disconnect the electricity at the meter) and looking through an open gate, saw what he recognized as a hedge of marijuana plants growing in Defendants' backyard. Leaving the area after having the electricity disconnected, Bryant saw Rio Rancho Police Department Officer Manno and told him he was sure Defendants were growing marijuana and provided the address. Officer Manno subsequently radioed Officers Gonzales and Robey as well as Detective Melton, who arrived at Defendants' house shortly. By that time, the gate was closed and Officer Gonzales walked up Defendants' sidewalk to the place where the electric meter had been and peered through the 3" x 3.5" heart-shaped cutouts in the back gate and saw what appeared to be a large hedge of marijuana plants. The faint aroma of marijuana was also present. Officer French arrived and along with Officer Robey looked through the cutouts and they also concluded this was marijuana. At this point Officer French ordered the house secured and Officer Robey went through the gate into the backyard to secure the rear of the house. While there, Officer Robey looked through a window and saw tinfoil lining a closet.

## *ISSUE*

Whether the officers were located in the curtilage or in an area open to public view when they first corroborated Bryant's tip that a large amount of marijuana was growing in Defendants' backyard.

2

## *DISCUSSION*

After reading the briefs and reviewing the diagrams attached, the Court was initially persuaded that the Rio Rancho police had likely violated the curtilage of Defendants' home and the evidence subsequently discovered likely must be suppressed. *United States v. Dunn*, 480 U.S. 294 (1987); *Care v. United States*, 231 F.2d 22 (10th Cir. 1956). However, this is a case where a picture is truly worth a thousand words. The photos introduced as Government Exhibits 6 and 7 clearly show an open sidewalk leading from the front driveway down the side of Defendants' house and into the backyard. If the backyard gate was closed or posted, it would denote an expectation of privacy at that point. However, a paved sidewalk along the side of the house past the electric meter to the gate does not broadcast an expectation of privacy in that area. *United States v. Hammett*, 236 F.3d 1054 (9th Cir. 2001); *United States v. French*, 291 F.3d 945 (7th Cir. 2002); *Ehlers v. Bogue*, 626 F.2d 1314 (5th Cir. 1980). Observations made from such a vantage point are thus not subject to the limitations imposed by the Fourth Amendment. *United States v. Morehead*, 959 F.2d 1489 (10th Cir. 1992); *United States v Reyes*, 283 F.3d 446 (2d Cir. 2002); *United States v. Evans*, 27 F.3d 1219 (7th Cir. 1994).

Defendants argue that this walkway did not leave the backyard visible from the street and would be used only by utility employees. However, the Tenth Circuit held an area containing a utility meter in an unenclosed portion of defendants' yard which

3

extended into an open field which then in turn bordered a public road was not so intimately tied to the house as to enjoy Fourth Amendment protection. *United States v. Knapp*, 1 F.3d 1026, 1029 (10th Cir. 1993). *See also State v. De La Paz*, 766 P.2d 820 (N.J. Super. 2001) (police entitled to look in window off alley where defendant's utility meter located). The burden of establishing a legitimate expectation of privacy that society is willing to recognize falls on the party claiming the Fourth Amendment violation. *United States v. Cavely*, 318 F.3d 987, 993-4 (10th Cir. 2003). Defendants have failed to meet that burden.

The Tenth Circuit reached a consistent result on analogous facts in *United States v. Hatfield*, 333 F.3d 1189 (10th Cir. 2003). In that case, the sheriff's office got a tip Hatfield was growing marijuana. Two undersheriffs approached his home to conduct a "knock and talk" interview. One officer went to the door, the other walked up the driveway about twenty feet. From there, he saw small tin structures in the backyard which might be used to grow marijuana. Hatfield refused to consent to search and the officers left. When they reported to their supervisor, he went to see Hatfield's house. He walked down the county road and stated he could see behind the tin sheds into the chicken coops where he thought he saw marijuana growing. He then walked across an open field and along Hatfield's fence and confirmed it was in fact marijuana. Hatfield was arrested and the officers proceeded to seek a warrant. The district court

4

denied the motion to suppress and the Tenth Circuit affirmed. Speaking for the

Court, Judge Ebel made the following salient observation:

> Hatfield claims that McCullum, while standing within the curtilage
> of Hatfield's home, conducted an unconstitutional search of the backyard
> during the knock and talk interview and passed on what he learned to
> Officer Harrold. Hatfield argues that he had a reasonable expectation of
> privacy in his backyard and McCullum's inspection of it without a
> warrant constituted a search in violation of the Fourth Amendment. We
> find this argument unavailing.
>
> Even if Officer McCullum could have observed the marijuana
> growing in Hatfield's backyard from his vantage point on the parking
> pad, it would not have amounted to an impermissible search. "[W]hen
> the police come on to private property to conduct an investigation ... and
> restrict their movements to places visitors could be expected to go (e.g.,
> walkways, driveways, porches), observations made from such vantage
> points are not covered by the Fourth Amendment." 1 Wayne R, LaFave,
> *Search & Seizure: A Treatise on the Fourth Amendment* § 2.3(f), at 506-08
> (3d ed. 1996) (footnotes omitted); *see also United States v. Reyes*, 283 F.3d
> 446, 465-67 (2d Cir. 2002) (holding that it is not a Fourth Amendment
> violation for officers standing on driveway to observe marijuana growing
> in the yard); *United States v. Smith*, 783 F.2d 648, 650-52 (6th Cir. 1986)
> (holding that Fourth Amendment was not violated when, before applying
> for a state search warrant, a detective drove seventy-five to one hundred
> yards up defendant's unobstructed driveway to investigate informant's
> tip that a large marijuana plant was growing by the house); *State v.
> Merrill*, 252 Neb. 510, 563 N.W.2d 340, 344 (1997) (holding that because
> "any member of the public could have entered upon Merrill's property
> in the same manner the officers did," the observation of marijuana in
> plain view from the driveway was not a search under the Fourth
> Amendment).

333 F.3d at 1194 (emphasis added).

As noted, the photo exhibits in the present case demonstrate that the marijuana

in Defendants' backyard could be seen through the cutouts in the gate while standing

on a sidewalk accessible to the public and expected visitors.  Moreover, Officer Gonzales said he could smell a faint aroma of marijuana from that vantage point. There is no reasonable expectation of privacy from the noses of police patrolling publicly accessible areas. *United States v. Gault*, 92 F.3d 990 (10th Cir. 1996).

## O R D E R

For the above stated reasons, *Defendants' Motion to Suppress* is DENIED.

SO ORDERED this ____2d____ day of ~~February,~~ March 2004.


**BRUCE D. BLACK**
**United States District Judge**